UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| ULMA Forja, S.Coop., <br><br> Plaintiff, <br><br> v. <br><br> United States, <br><br> Defendant | Court No. 24-00162 |

## COMPLAINT

Plaintiff ULMA Forja, S.Coop. ("ULMA"), by and through their counsel, hereby allege and state the following:

### JURISDICTIONAL STATEMENT

1. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(c) because the action is commenced under Section 516A of the Tariff Act of 1930, as amended, 19 U.S.C.§ 1516a.  This action contests the final results issued by the U.S. Department of Commerce ("Commerce" or the "Department") in the sixth administrative review of the antidumping duty order on Finished Carbon Steel Flanges from Spain (A-469-815).  *See Finished Carbon Steel Flanges From Spain: Final Results of Administrative Review; 2022-2023*, 89 Fed. Reg. 60,862 (July 29, 2024) ("Final Results").

2. Commerce's analysis of the issues and data are contained in an Issues and Decision Memorandum,  Issues and Decision Memorandum for Final Results of the Administrative Review of the Antidumping Duty Order on Finished Carbon Steel Flanges from Spain; 2022-2023 (July 23, 2024) ("Final IDM"), and an Analysis Memo, Finished Carbon Steel

Flanges from Spain: Analysis of Data Submitted by ULMA Forja S.Coop for Final Results of Antidumping Duty Administrative Review; 2022-2023 (July 23, 2024) ("Final Analysis Memo").

## STANDING OF PLAINTIFF

3. ULMA is a foreign producer and exporter of subject merchandise who was a responding party in the administrative review now being challenged. ULMA is therefore an interested party within the meaning of 19 U.S.C. §1677(9)(A) and 1516a(f)(3).

4. ULMA has standing to bring this action under section 516A(d) of the Tariff Act of 1930, 19 U.S.C. § 1516a(d) and 28 U.S.C. § 2631(e).

## TIMELINESS OF THIS ACTION

5. Commerce published notice of the contested determination on July 29, 2024. *See* 89 Fed. Reg. 60,862. This action was commenced with the filing of the Summons on August 22, 2024, within 30 days after the publication of the Final Results. This complaint is being filed within 30 days of the filing of the summons in accordance with Rule 3(a)(2) of the Court of International Trade. Accordingly, this action is timely filed under 19 U.S.C. 1516a(a)(2)(A).

## STATEMENT OF FACTS

6. The original antidumping duty order on Finished Carbon Steel Flanges from Spain was imposed in June 2017. *See Finished Carbon Steel Flanges from Spain: Antidumping Duty Order,* 82 Fed. Reg 27,229 (June 14, 2017).

7. On August 3, 2023, Commerce published notice of initiation of the sixth administrative review of the AD order on Finished Carbon Steel Flanges from Spain. *See Initiation of*

*Antidumping and Countervailing Duty Administrative Reviews*, 88 Fed. Reg. 51,271 (Aug. 3, 2023).  ULMA was an interested party and the sole mandatory respondent in the administrative review.  *See Carbon Steel Flanges From Spain: Preliminary Results of Antidumping Duty Administrative Review and Rescission of Review in Part; 2022-2023*, 89 Fed. Reg. 40,465 (May 10, 2024).

8. On July 29, 2024 Commerce published its Final Results in the sixth administrative review of the antidumping order on Finished Carbon Steel Flanges from Spain.  89 Fed. Reg. 60,862.

9. In the Final Results, Commerce employed a "differential pricing analysis" and found that 76.75 percent of the value of ULMA's U.S. sales passed Commerce's adaptation of the "Cohen's *d*" test, which Commerce determined confirmed the existence of a pattern of prices that differ significantly among purchasers, regions, or time periods within the meaning of 19 U.S.C. § 1677f-1(d)(1)(B)(1).  Final Analysis Memo at 3.

10. Commerce further determined that the default average-to-average comparison method for calculating the weighted-average dumping margin in original investigations and administrative reviews, *see* 19 C.F.R. 351.414(c)(1), could not account for such differences because the weighted-average dumping margin crosses the *de minimis* threshold when calculated using the average-to-average method and when calculated using an alternative comparison method based on applying the average-to-transaction method to all U.S. sales. *Id*.

11. Based on the results of its differential pricing analysis and related determinations, Commerce resorted to 19 U.S.C. § 1677f-1(d)(1)(B)(2) and applied the average-to-transaction comparison method to all of ULMA's U.S. sales to calculate a weighted-average

3

dumping margin of 1.89%. The default average-to-average method would have produced a weighted-average dumping margin of 0.00%. *Id*.

## STATEMENT OF CLAIMS

12. In the following respects, and for other reasons apparent from the administrative record of Commerce's antidumping administrative review, the Final Results are not supported by substantial evidence on the record and are otherwise not in accordance with law.

**Count 1: The results of Commerce's differential pricing analysis are not supported by substantial evidence and otherwise contrary to law because Commerce utilized a simple average instead of a weighted average to calculate the denominator of the *d* coefficient in its Cohen's *d* test and did not provide any reasonable explanation for why this may still provide meaningful results.**

13. ULMA hereby re-alleges and incorporates by reference paragraphs 1 through 12.

14. Commerce's adaptation of the Cohen's *d* test to find a pattern of ULMA prices that differ significantly among purchasers, regions, or time periods within the meaning of 19 U.S.C. § 1677f-1(d)(1)(B)(1) relies upon a simple average instead of a weighted average to calculate the denominator of the *d* coefficient, contrary to the approach supported the statistical literature. In doing so, Commerce failed to provide any reasonable explanation why this departure from well-established statistical norms and guidance could still provide meaningful results to confirm the existence of a pattern of prices that differ significantly among purchasers, regions, or time periods.

15. Commerce's failure to provide a reasonable explanation to justify the use of a simple average to calculate the denominator of the *d* coefficient renders its differential pricing analysis and resort to an average-to-transaction comparison methodology to calculate

4

ULMA's weighted-average dumping margin unsupported by substantial evidence and otherwise contrary to law.

**Count 2:    The results of Commerce's differential pricing analysis are not supported by substantial evidence and otherwise contrary to law because Commerce applied the Cohen's *d* test to groups of sales data that did not meet the assumptions of normality and equal variances on which the test is based and did not provide any reasonable explanation for why this may still provide meaningful results.**

16. ULMA hereby re-alleges and incorporates by reference paragraphs 1 through 15.

17. Commerce's adaptation of the Cohen's *d* test to find a pattern of ULMA prices that differ significantly among purchasers, regions, or time periods within the meaning of 19 U.S.C. § 1677f-1(d)(1)(B)(1) was applied to comparison groups that were either not normally distributed, unequal in size, or unequal variances, or a combination of two or more defects. As such, Commerce's application did not meet the assumptions of normality and equal variances on which the test is based. In doing so, Commerce failed to provide any reasonable explanation why this departure from well-established statistical norms and guidance could still provide meaningful results to confirm the existence of a pattern of prices that differ significantly among purchasers, regions, or time periods.

18. Commerce's failure to provide a reasonable explanation to justify its failure to meet the assumptions of normality and equal variances on which the Cohn's *d* test is based renders its differential pricing analysis and resort to an average-to-transaction comparison methodology to calculate ULMA's weighted-average dumping margin unsupported by substantial evidence and otherwise contrary to law.

## PRAYER FOR JUDGMENT AND RELIEF

WHEREFORE, for the foregoing reasons, ULMA prays that this Court enter judgment as follows:

(A)   Enter judgment in favor of ULMA;

(B)   Hold as unlawful Commerce's final results of the sixth administrative review of the antidumping duty order on Finished Carbon Steel Flanges from Spain that are the subject of this Complaint,

(C)   Remand this proceeding to Commerce with instructions to publish revised final results and recalculate ULMA's antidumping duty rate in conformity with the Court's decision; and

(D)   Grant ULMA such additional relief as the Court may deem just and proper.


Respectfully submitted,

/s/ Matthew P McCullough

Matthew P McCullough

**Curtis Mallet-Prevost, Colt & Mosle LLP**

1717 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
202-452-7373

*Counsel for ULMA Forja, S.Coop.*

Dated: September 17, 2024.